## SWEARINGEN AND WIFE vs. TAYLOR AND WIFE.

1. A bequest to the testator's wife, "for her support, and the education of his daughter, of all the monies which might be due him, after his debts were paid, and all the rents and proceeds of his property of every description, for and during his life," conveys an estate to the wife, for life only.

## APPEAL from St. Louis Circuit Court.

### STATEMENT OF THE CASE.

On the 9th January, 1839, William Christy, of St. Louis, made his will by which he devised to his wife Martha J. Christy for and during her life the two blocks of ground on which he resided with all the buildings for a place of residence for her and any of the testator's children she might choose to live with her. He next bequeathed to his wife for her support and the support and education of his young and unmarried children all "my income of every kind," with all the slaves which he might own at his death, and he authorized his executors to sell any of the slaves at the request of his wife and supply their places with others more suitable, declaring it to be his will that his wife should be at liberty to bestow his slaves at her death upon any of his children, or make equal division amongst them or otherwise as she might think best. He also bequeathed to his wife "her heirs and assigns forever" all his stock of horses, cattle, &c., all his household and kitchen furniture and provisons which might be on hand at the time of his death; also for her support and the education of his daughter Virginia, all the moneys which might be due him after his debts were paid, and all the rents and proceeds of his property of every description for and during her life. He authorized his executors to sell any of his real estate for the payment of his debts and to make conveyances for land which he might have sold and not conveyed. He then devises to three of his grand-daughters, children of a deceased daughter, the portion of his real estate which their mother would have taken if she had lived, and he had died intestate. He next disposes of the remainder in the lots devised to his wife for life and provides for the payment of a sum of money toward the education of a grand-son and then directs that his executors shall pay to his daughter Virginia "from the income of my estate" yearly, four hundred dollars "to commence after the death of her mother," should she be then unmarried and to continue until she was married. The remaining provisions of the will have no bearing upon the present controversy, and are therefore not set out. It appears, however, that the will does not profess to be a disposition of his estate at large, nor to make provision for his children in general. As to the most of his real estate he died intestate.

At the time of the testator's death there were some debts owing to him which were of older date than his will, but to a small amount.

After the making of the will the testator divided a portion of his real estate near to the city of St. Louis into lots as an addition to the city and sold the lots in the summer of the year 1836, upon the following terms: One-tenth of the purchase money paid in cash and the balance upon a credit of —— years the deferred payment bearing interest at —— per cent. per annum, the interest to be paid annually and the whole secured by deeds of trust upon the property sold, which deeds of trust contained the stipulation that upon a failure to pay the interest as it accrued the property should be sold under the deeds of trust and the whole amount of the unpaid purchase money and interest should be paid as the principal should become due by the failure to pay the interest.

The sale thus made amounted to more than eighty thousand dollars and the securities taken

Swearingen and wife vs. Taylor and wife.

at the sale as well as securities for other indebtedness, came into the hands of the complainant Nathaniel P. Taylor as administrator de bonis non.

Some of the purchasers having failed after the death of the testator to pay the interest upon their notes, the administrator caused the trustees named in the deeds of trust to make sale of lots upon which the money was secured, and in order to prevent a sacrifice of the property and injury to those interested in the money secured upon the lots, the administrator, N. P. Taylor attended the sales and bought in the lots taking the deeds in his own name.

He now files his bill in the circuit court of St. Louis county, stating his puschases thus made at the trustees' sale, and that the conveyances were taken in his own name and stating that in consequence of there being different opinions entertained as to the rights of the parties interested in the property thus purchased, as those rights were to be ascertained by the will of the said Christy he was unable to convey the said property purchased by him to any of them with safety. He therefore makes the widow and heirs of Christy parties, and prays the court to determine what parties are equitably entitled to the property, and in what interests, and to direct a conveyance to be made accordingly.

The widow appeared and claimed in her answer that the absolute interest in said property in fee simple, belonged to her under the will of her husband. She states the ground of her claim to be that the whole of the money due upon the notes and deeds of trust were bequeathed to her, and that if it had been paid, she would have been entitled to the whole of it absolutely. She further claims, that as the will gave her the whole of the income of the estate she was entitled to all the interest that had accrued upon the notes up to the time of sale, and that at the sales the purchases were made for sums not exceeding the interest due. She admits that the sales were made at prices far below the value of the property in conveyance of an agreement between the administrator, (N. P. Taylor) and most of the heirs of William Christy among whom she names the appellant Swearingen, that they would not bid against the administrator and that he should purchase the property and take the deeds in his own name and hold it for those interested in the estate of said Christy, and be disposed of among them according to law.

Some of the heirs appeared to the bill and answered, others allowed the court to proceed without answer, as the whole question depended on the construction to be given to the will.

At the hearing the circuit court had before it the accounts of the administration of the estate of the deceased showing the money on hand at the testator's death, the amount of securities for money as well those taken before the making of the will as those taken afterwards, those due before the testator's death, and those becoming due after his death; shewing also the rents received from real estate and paid over to the widow.

The circuit court decreed that the widow was entitled in fee simple to all the real estate purchased by Taylor the administrator and that it should be conveyed to her in fee. From this decree Swearingen and wife appealed and have brought the case to this court.

GAMBLE & BATES, for appellant.

The appellants regard this case as depending upon two questions which are—

1· Does the will of William Christy give to his widow, Martha T. Christy, any interest in the securities for money which at the time of his death were not due, but had a long time to run before their maturity?

2. If the widow under the will had any interest in the securities, was that interest more than for life?

The seccurities for money out of which, or in relation to which this controversy has arisen were at the death of the testator promissory notes having a credit of near ten years; given for real estate sold by the testator after making his will, and secured by deeds of trust on the real estate thus sold. These debts bore an interest payable annually.

Did the will pass these securities or any interest in them to the widow? We mention:

1. That the will leaves these securities as well as all other parts of the estate in the hands of those who by law are charged with the management of the whole eastate.

2. That the bequest of the whole income of an estate is the bequest of its actual annual product after its annual burdens are borne. In other words it is the money actually received and remaining after discharging all expenses of the estate.

3. Such a bequest gives no right to the legatee to claim a specific sum of money as hers, because it was received as the product of one part of the estate. It is to pass into the general account of the persons administering the estate and the legatee may or may not find the balance in her favor.

4. The producing capital of the estate is to be preserved and when it becomes necessary to change the character of the fund as from personalty to realty the principal sum is that which is first to be regarded and is first invested and until it is secured, it has produced nothing which is to be called income.

5. The purchase of realty by N. P. Taylor as stated upon the record being a change of the fund in his hands as executor from personalty to realty, and being at prices far below the principal sums due upon the securities produced no income to which Mrs. Christy was entitled.

But the second clause is relied upon as vesting in Mrs. Christy an interest in these securities. Upon this branch of the case the appellant insists that a bequest of "money" does not carry promissory notes, mortgages or other securities. 1 John. Ch. R., 231; Williams on executions.

If the form of the bequest of "moneys due me" would extend the operation of bequest of debts due, then it cannot be carried beyond the import of the words so as to operate upon moneys not due at the death of the testator.

The will speaks at the testator's death. The words "moneys due me" embrace nothing but moneys due when the testator describes them. 1 Roper on Legacis, 212; Merivale Reports, 434.

The words connected with the bequest "after my debts are paid," are not a designation of the time when the moneys are to become due, but are intended to make the debts primarily a charge upon those moneys.

The second question presented is, whether if the widow under any of the words of the will takes an interest in the securities she takes any thing more than a life interest.

I will not cite authorities as to the force of the testator's intention. They are familiar to all lawyers and judges. But it may not be useless to refer to the general rules observed in construing wills; as those rules have been extracted from cases and condensed in treatises on the subject of wills. 2 Roper on Legacies, 322; Raw. on Wills, 6 Law Library, 31 as to means of collecting intention, 64; intention to be collected from whole will, 66; contest explains intention, 93; intention of a devise may be explained by another devise, 100; when there are two intentions, the chief is to be carried into effect.

If under this will Mrs. Christy took no interest in the securities which have been changed into the property purchased by Taylor, the administrator; or if she took an interest in the money to be collected upon those securities and that interest was for only her life, then the decree of the circuit court must be reversed because she had no other in the property so purchased than she had in the securities.

## KASSON, for appellees.

The will is to be construed to effectuate the intent of the testator, disclosed by the instrument itself, upon a fair view of his purposes, and is not to be bent to suit any artificial rule of law.

The testator gives to the widow, "her heirs and assigns forever," not the current revenue and uses, but certain property *in solido*. It is not the interest on the moneys, but the moneys

Swearingen and wife vs. Taylor and wife.

themselves, after debts are paid; the next amount due to the estate, after deducting the debts due from it, is what is given. It is a complete transmutation of language to say that "moneys" means interest on them, He gives the fund itself. There is no remainder over, Where not expressed, it will not be implied. This view is strengthened by the fact, that he, in the clause immediately adjoining and following this, does expressly discriminate between property itself, and its current uses, or "proceeds" showing thus, that whenever he desired, he understood the way of making the distinction. The express application of the restriction to one subject, excludes the implication of it to the other.

The first branch of this clause of gift is contradictory to the last, if both were to be applied to the whole clause. Not as if they apply to different branches of the clause. What shall then afford a rule of distinction? I answer the subject as well as the object of the gift. All down to debts, "debts" inclusive, involves personalty alone; the remainder of the gift evidently applies to hereditaments and property not before specifically granted to her, and the rents and proceeds of these things not before granted to her, are limited to her for life. Where the testator had already appropriated the subject itself, it would be superfluous to grant also the rents and proceeds of the subject.

The testator, means to leave the children dependent upon the widow and subject to her discretion. Though he mentions them as under the care of the widow, he does not create a trust for either of them. He mentions them and especially Virginia, as in part his motive in making the gift, but not as the object of the gift. Had he designed to make a trust here for her, it would be void for uncertainty. For instances and explanations of this distinction, see Hoy vs. Master, 6 Sim. Ch. k. 568, Lechmore vs. Lavie, 2 Myl. & Reene, 197; 1 Jarmin vs. Wells, (2d Am. ed.) 335, 338; Benson vs. Whittam, 5 Simon's C. R. 22.

Words of mere suggestion and affirmation are not restrictive: 1 Jarm. (2d Am. ed.) 718.

The word "due" is used in its popular sense, as much as the word "debts" which occurs in the same sentence. "All the moneys which may be due me" signifies simply all the moneys which may be owing to me.

The case in 1 John. Ch. R. 232, is no authority here; for this will expressly shows that the testator was regarding moneys not yet in possession, potential moneys, that is debts.

The case shows that but a meagre provision would have been made for the widow out of these debts, had they been limited to those actually payable at his death. But such a construction cannot prevail, in the face of the terms of this will.

BIRCH, J., delivered the opinion of the court.

Nothing seeming to be desired by the counsel in this case, beyond the mere judgment of this court, respecting the proper construction of the bequests of the will in question, it will of course suffice to state, as the unanimous concurrence to which our investigations have conducted us, that an estate for life only, was conveyed to the widow, by those bequests which are expressed to be either for "her support," "for the education of his daughter" or for "the support and education of his young and unmarried children."

The decreee of the circuit court is accordingly reversed and the cause remanded.